IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

CLARK STOECKLEY and ERIK MCGREGOR,

                     PLAINTIFFS,

           -versus-

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE OFFICER VINCENT
BOCCIO, NEW YORK CITY POLICE SERGEANT
ANTHONY SANTANGELO, NEW YORK CITY POLICE
OFFICER CHRISTOPHE VENTURA, NEW YORK CITY
POLICE LIEUTENANT JACK KONSTANTINIDIS (RETIRED),
NEW YORK CITY POLICE CAPTAIN WILLIAM GARDNER,
NEW YORK CITY POLICE SERGEANT ALLAN FLAXMAN
NEW YORK CITY POLICE OFFICER PETER STABILE,
NEW YORK CITY POLICE OFFICER BRIAN BLAZER,
NEW YORK CITY POLICE OFFICER FRANK BONILLA,
NEW YORK CITY POLICE OFFICER JAMES MAZZOLA,
NEW YORK CITY POLICE OFFICER SANABRIA,
NEW YORK CITY POLICE OFFICER FELICIANO
NEW YORK CITY POLICE SERGEANT "JANE DOE
POLICE SERGEANT FROM 10/17/11 INCIDENT", NEW YORK
CITY POLICE OFFICER "JOHN DOE NYPD TOW TRUCK
DRIVER FROM 10/17/11 INCIDENT", NEW YORK CITY
POLICE OFFICER ANTHONY ANGLISANO, NEW YORK
CITY POLICE OFFICER JOHN BLANCO, and NEW YORK
CITY POLICE OFFICERS "JOHN DOES 1-10,"

                     DEFENDANTS.

_____

INDEX NO.
13cv6173 (VSB)
(DCF)

ECF CASE

FIRST AMENDED
COMPLAINT
[JURY TRIAL
DEMANDED]

     Plaintiffs CLARK STOECKLEY and ERIK MCGREGOR, represented by their attorneys, STECKLOW COHEN & THOMPSON, complaining of the Defendants, respectfully allege as follows:

## I. PRELIMINARY STATEMENT

    1.    Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and

42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

2.     On Thursday, November 17, 2011 Plaintiff CLARK STOECKLEY with Plaintiff ERIK MCGREGOR was driving his truck near Zuccotti Park and looking for a place to park near the same. As part of a continuing art project, Plaintiff CLARK STOECKLEY's truck ("The WikiLeaks Truck") is painted to suggest, satirically, an association with the WikiLeaks entity. Plaintiff CLARK STOECKLEY is not personally or professionally affiliated with the WikiLeaks entity. Plaintiff CLARK STOECKLEY and ERIK MCGREGOR were stopped, pulled over, and arrested without cause by several of the Defendant POLICE OFFICERS herein.

3.     Following the incident and arrest in question, the Defendant POLICE OFFICERS detained Plaintiff ERIK MCGREGOR for approximately six hours. Following this detainment, Plaintiff ERIK MCGREGOR received a Desk Appearance Ticket, charging him with Obstruction of Governmental Administration in the Second Degree. Following approximately three appearances before the Court, all charges against Plaintiff ERIK MCGREGOR were dismissed. The Defendant POLICE OFFICERS later detained Plaintiff CLARK STOECKLEY for approximately thirty hours. Following this detainment, the Defendant POLICE OFFICERS charged Plaintiff CLARK STOECKLEY with multiple traffic violations as well as Obstruction of Governmental Administration in the Second Degree. Following multiple appearances in New York traffic, summons, and criminal courts, all charges against Plaintiff CLARK STOECKLEY were dismissed.

4.     The Defendant POLICE OFFICERS later offered false information to Plaintiff CLARK STOECKLEY in regards to the location of The WikiLeaks Truck following his arrest. Such false information both directly and indirectly resulted in Plaintiff CLARK STOECKLEY being deprived of the use and possession of The WikiLeaks Truck for approximately six days. In sum, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR bring the following action as a quest for answers as to why they were punitively arrested without probable cause, detained at length, and subjected to prosecution in the absence of criminal conduct.

## II. JURISDICTION

5.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

6.     Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

7.     Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

2

8.    Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR respectfully demand a trial by jury for all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

9.    At all times pertinent to this complaint, Plaintiff CLARK STOECKLEY was a resident of Chance, Maryland and New York, NY.

10.   At all times pertinent to this complaint, Plaintiff ERIK MCGREGOR was a resident of New York, NY.

11.   Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

12.   Defendant THE CITY OF NEW YORK maintains the New York Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

13.   That at all times hereinafter mentioned, Defendant POLICE OFFICER VINCENT BOCCIO ("Defendant POLICE OFFICER BOCCIO") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

14.   That at all times hereinafter mentioned, Defendant POLICE SERGEANT ANTHONY SANTANGELO ("Defendant POLICE SERGEANT SANTANGELO") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

15.   That at all times hereinafter mentioned, Defendant POLICE OFFICER CHRISTOPHE VENTURA ("Defendant POLICE OFFICER VENTURA") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

16.   That at all times hereinafter mentioned, Defendant POLICE CAPTAIN WILLIAM GARDNER ("Defendant POLICE CAPTAIN GARDNER") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

17.   That at all times hereinafter mentioned, Defendant POLICE LIEUTENANT JACK KONSTANTINIDIS (RETIRED) ("Defendant POLICE LIEUTENANT KONSTANTINIDIS") was a duly sworn police lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties.

18.   That at all times hereinafter mentioned, Defendant POLICE SERGEANT ALLAN FLAXMAN ("Defendant POLICE SERGEANT FLAXMAN") was a duly sworn police sergeant of the NYPD and was acting under the supervision of said department and according to his official duties.

19.   That at all times hereinafter mentioned, Defendant POLICE OFFICER PETER STABILE ("Defendant POLICE OFFICER STABILE") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

20.     That at all times hereinafter mentioned, Defendant POLICE OFFICER BRIAN BLAZER ("Defendant POLICE OFFICER BRIAN BLAZER") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

21.     That at all times hereinafter mentioned, Defendant POLICE OFFICER FRANK BONILLA ("Defendant POLICE OFFICER BONILLA") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

22.     That at all times hereinafter mentioned, Defendant POLICE OFFICER JAMES MAZZOLA ("Defendant POLICE OFFICER MAZZOLA") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

23.     That at all times hereinafter mentioned, Defendant POLICE OFFICER SANABRIA was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.

24.     That at all times hereinafter mentioned, Defendant POLICE OFFICER FELICIANO was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to her official duties.

25.     That at all times hereinafter mentioned, Defendant POLICE SERGEANT "JANE DOE SERGEANT FROM 10/17/11 INCIDENT" was acting under the supervision of said department and according to her official duties.

26.     Upon information and belief, Defendant POLICE SERGEANT "JANE DOE SERGEANT FROM 10/17/11 INCIDENT" was a police sergeant working as part of the NYPD's Midtown North Task Force on October 17, 2011.

27.     Upon information and belief, Defendant POLICE SERGEANT "JANE DOE SERGEANT FROM 10/17/11 INCIDENT" surname is similar to "Dulmello".

28.     Images depicting the identity of Defendant POLICE SERGEANT "JANE DOE SERGEANT FROM 10/17/11 INCIDENT" are attached hereto as **Exhibit A.**

29.     That at all times hereinafter mentioned, Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT" was acting under the supervision of said department and according to his official duties.

30.     Upon information and belief, Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT" was working as part of the NYPD's Traffic Control Division on October 17, 2011.

31.     Images depicting the identity of Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11" are attached hereto as **Exhibit B.**

32.     That at all times hereinafter mentioned, Defendant POLICE OFFICER ANTHONY ANGLISANO ("Defendant POLICE OFFICER ANGLISANO") was acting under the supervision of said department and according to his official duties.

33.     That at all times hereinafter mentioned, Defendant POLICE OFFICER JOHN BLANCO ("Defendant POLICE OFFICER BLANCO") was acting under the supervision of said department and according to his official duties.

34.   That at all times hereinafter mentioned, each of the Defendant POLICE OFFICERS "John Does 1-10" (hereinafter, collectively along with Defendant POLICE OFFICER BOCCIO, Defendant POLICE SERGEANT SANTANGELO, Defendant POLICE OFFICER VENTURA, Defendant POLICE CAPTAIN WILLIAM GARDNER, and Defendant POLICE LIEUTENANT KONSTANTINIDIS, Defendant POLICE SERGEANT FLAXMAN, Defendant POLICE OFFICER STABILE, Defendant POLICE OFFICER BLAZER, Defendant POLICE OFFICER BONILLA, Defendant POLICE OFFICER MAZZOLA, Defendant POLICE OFFICER SANABRIA, Defendant POLICE OFFICER FELICIANO, Defendant POLICE SERGEANT "JANE DOE SERGEANT FROM 10/17/11 INCIDENT", Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT", Defendant POLICE OFFICER ANGLISANO and Defendant POLICE OFFICER BLANCO, "The Defendant POLICE OFFICERS") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

35.   Plaintiffs will amend this complaint to name the Defendant POLICE OFFICERS "John Does 1-10" as their identities can be established to a reasonable certainty.

36.   That at all times hereinafter mentioned each of the Defendant POLICE OFFICERS were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

37.   Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

38.   Plaintiff CLARK STOECKLEY is a professional artist and art professor who is perhaps best known for his satirical and activist artworks.

39.   Plaintiff CLARK STOECKLEY has a Master of Fine Arts Degree in performance and interactive media art, summa cum laude, from Brooklyn College, City University of New York.

40.   Plaintiff CLARK STOECKLEY currently teaches subjects including Advanced Painting as an adjunct professor at Bloomfield College in Bloomfield, New Jersey.

41.   Plaintiff CLARK STOECKLEY's works have been featured in venues including the Pratt Manhattan Gallery and the Contemporary Museum of St. Louis, among many others.

42.   On or about March 19, 2011, as an artwork, Plaintiff CLARK STOECKLEY re-painted and re-decorated a small box truck owned by Plaintiff CLARK STOECKLEY, so as to cause the sides of said truck to state "WikiLeaks Top Secret Mobile Information Collection Unit" on each side and "Release Bradley Manning BradleyManning.Org" on its back door ("The WikiLeaks Truck").

43.   Upon information and belief, WikiLeaks is an entity founded in 2006 that publishes private, secret, and classified information from anonymous news sources and whistleblowers.

44.   On information and belief, executive actors of governments including but not limited to the United States Government disapprove of WikiLeaks and its practice of widely disseminating classified information.

45.   Plaintiff CLARK STOECKLEY has used The WikiLeaks Truck in his art and what he refers to as "artivism," in manners including but not limited to photographing The WikiLeaks Truck in various locations, and by placing The WikiLeaks Truck in particular locations to arouse public attention and comment.

46.   Plaintiff CLARK STOECKLEY is not personally or professionally connected to the WikiLeaks organization.

47.   At all times relevant, Plaintiff CLARK STOECKLEY privately owned The WikiLeaks Truck.

48.   At all times relevant, Plaintiff CLARK STOECKLEY, had registered The WikiLeaks Truck as a privately owned vehicle.

49.   At all times relevant, The WikiLeaks Truck bore the standard license plates of a sort assigned to privately owned vehicles.

50.   One of the primary purposes of Plaintiff CLARK STOECKLEY's continuing works involving The WikiLeaks Truck is to draw attention to the continuing legal plight of PFC Bradley Manning, who at all times relevant, was facing military prosecution for allegedly leaking information to WikiLeaks.

51.   Plaintiff CLARK STOECKLEY has completed a graphic novel of sketches and observations from the trial, "The United States v. Private First Class Bradley Manning." This novel was published in 2014 and is on sale now.[1]

52.   Over the course of his artistic uses of The WikiLeaks Truck, Plaintiff CLARK STOECKLEY has been harassed and arrested by police in numerous jurisdictions where Plaintiff CLARK STOECKLEY has brought The WikiLeaks Truck.

53.   On information and belief, the recurring instances of harassment endured by Plaintiff CLARK STOECKLEY for his artistic expression reflect a general bias of law enforcement against WikiLeaks, and any persons (or vehicles) advocating for same.

54.   On Thursday, November 17, 2011 at or around 12:00pm, Plaintiff CLARK STOECKLEY was driving The WikiLeaks Truck near Zuccotti Park ("The Park").

55.   Plaintiff CLARK STOECKLEY had intended to drop off blankets, winter clothing and supplies that he had just picked up from Judson Memorial Baptist Church, where they had been collected for donation to Occupy Wall Street ("OWS") participants.[2]

56.   Several peaceful OWS participants and bystanders were standing near the area of The Park where Plaintiff CLARK STOECKLEY intended to drop off the aforementioned blankets and winter clothing and supplies.

57.   Many of the peaceful OWS demonstrators and bystanders who were present at the scene of the incident and arrest in question were there in order to observe or participate in OWS' "International Day of Action", which took place on the same day.

---

[1] The United States v. Pfc. Bradley Manning, "A Graphic Account from Inside the Courtroom" http://www.orbooks.com/catalog/manning-trial/
[2] OWS began on September 17, 2011 and is a collection of individuals and ideas that, *inter alia*, seek to call attention to and change inequalities and ill effects created through government-driven and corporation-favoring policies and practices that prevent a vast majority of individuals from enjoying the rights, liberties, and freedoms guaranteed to them by the United States Constitution.

58.   The "International Day of Action", *inter alia*, was OWS' peaceful response to the Defendant THE CITY OF NEW YORK's midnight eviction of OWS' demonstrators from Zuccotti Park two days before, Tuesday, November 15th, 2011.

59.   At or around 12:00pm, Plaintiff CLARK STOECKLEY —— while looking for a place to park The WikiLeaks Truck in order to unload the aforementioned blankets and winter clothing and supplies —— spotted Plaintiff ERIK MCGREGOR standing on the sidewalk of Broadway between Centre Street and Liberty Street.

60.   Knowing that he could use a hand with unloading the blankets and winter clothing and supplies, Plaintiff CLARK STOECKLEY stopped The WikiLeaks Truck near Plaintiff ERIK MCGREGOR and asked for his help.

61.   Volunteering his time and assistance, Plaintiff ERIK MCGREGOR stepped into the passenger seat of The WikiLeaks Truck.

62.   Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR continued looking for a place to park The WikiLeaks Truck.

63.   Shortly after Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR found a possible place to park The WikiLeaks Truck, one of the Defendant POLICE OFFICERS approached the truck and stated to Plaintiffs, in sum and substance, "You all cannot park here. Everyone has to move."

64.   Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR complied.

65.   Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR continued circling to find parking.

66.   As Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR were stopped at a traffic light at or around the intersection of Broadway and Cedar Street, one or more of the Defendant POLICE OFFICERS approached the driver's side of The WikiLeaks Truck and instructed Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR to, in sum and substance, "Pull the truck over."

67.   Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR complied.

68.   At or around this time, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR noticed that there were six to ten police officers in "riot gear", i.e., police uniforms equipped with helmets with facemasks, body shields, and body padding, standing near the segment along Broadway where the Defendant POLICE OFFICERS had instructed them to pull over.

69.   After Plaintiff CLARK STOECKLEY pulled The WikiLeaks truck over to the side of Broadway, one or more of the Defendant POLICE OFFICERS approached the WikiLeaks truck.

70.   Plaintiff CLARK STOECKLEY then asked one or more of the Defendant POLICE OFFICERS, in sum and substance, "Why are you pulling me over?"

71.   In response, one or more of the Defendant POLICE OFFICERS took a step away from the drivers side door of The WikiLeaks Truck and glanced toward the back of The WikiLeaks Truck.

72. The same Defendant POLICE OFFICER then stated, in sum and substance, "We pulled you over because the truck's license plate is tilted."

73. This statement was false.

74. On information and belief, the license plates affixed to The WikiLeaks Truck were straight.

75. At or around this time, one or more of the Defendant POLICE OFFICERS stated, in sum and substance, "We pulled you over because your headlights were off while your windshield wipers were on."

76. This statement was false.

77. On information and belief, the headlights of The WikiLeaks Truck were turned on whenever the windshield wipers of the WikiLeaks Truck were in use.

78. At or around this time, one of the Defendant POLICE OFFICERS who was a member of the NYPD's Technical Assistance Response Unit ("TARU") approached the driver's side door of The WikiLeaks Truck.

79. One or more of the Defendant POLICE OFFICERS instructed Plaintiff CLARK STOECKLEY to, in sum and substance, "Open the drivers side door of the truck."

80. On information and belief, the Defendant POLICE OFFICERS did not have a warrant to search The WikiLeaks Truck.

81. The Defendant POLICE OFFICERS did not present a warrant to search The WikiLeaks Truck.

82. On information and belief, no exigent circumstances existed to necessitate a search of The WikiLeaks Truck.

83. At or around this time, Plaintiff CLARK STOECKLEY stated, in sum and substance, "I do not consent to a search."

84. The Defendant POLICE OFFICERS did not have probable cause to search The WikiLeaks Truck.

85. This was not the first time that NYPD officers had stopped Plaintiff CLARK STOECKLEY while he was driving The WikiLeaks truck.

86. The first time NYPD officers stopped Plaintiff CLARK STOECKLEY while he was driving The WikiLeaks Truck was on or around September 17th, 2011.

87. That stop led to NYPD officers conducting a search of The WikiLeaks Truck.

88. The NYPD officers who performed the September 17, 2011 stop and search of The WikiLeaks Truck did so without a warrant to search the truck.

89. The NYPD officers who performed the September 17, 2011 stop and search of The WikiLeaks Truck did so without probable cause.

90. The NYPD officers who performed the September 17, 2011 stop and search of The

WikiLeaks Truck did so without either a warrant to search or arrest Plaintiff CLARK STOECKLEY.

91.   On information and belief, The NYPD officers who performed the September 17, 2011 stop and search of The WikiLeaks Truck did so without exigent circumstances for the search.

92.    On information and belief, Plaintiff CLARK STOECKLEY consented the NYPD officers' search of The WikiLeaks Truck on September 17, 2011.

93.   On November 17, 2011, after stating that he did not consent to a search, Plaintiff CLARK STOECKLEY used his cellphone to call his attorney in order to procure legal advice concerning how to legally exercise his Fourth Amendment rights in the situation at hand.

94.   Plaintiff CLARK STOECKLEY asked the Defendant POLICE OFFICERS to speak with his attorney.

95.   Each of the Defendant POLICE OFFICERS refused to speak with Plaintiff CLARK STOECKLEY's attorney.

96.   Another attorney ("Observing Attorney") was present nearby the Incident.

97.   Observing Attorney approached the driver's side of The WikiLeaks Truck and asked Plaintiff CLARK STOECKLEY, in sum and substance, "You're not consenting to any search, are you?"

98.   Plaintiff CLARK STOECKLEY responded, in sum and substance, "I have not, are you a lawyer?"

99.   Observing Attorney indicated that he was a lawyer.

100.  Observing Attorney, via-telephone, conferred with Plaintiff CLARK STOECKLEY's attorney.

101.  One or more of the Defendant POLICE OFFICERS approached the driver's side of The WikiLeaks Truck and stated to Observing Attorney, in sum and substance, "I need you to step away from the vehicle."

102.  Observing Attorney complied.

103.  Observing Attorney stated to one or more of the Defendant POLICE OFFICERS, in sum and substance, "You have to get a warrant in order to search the truck."

104.  The Defendant POLICE OFFICERS did not respond.

105.  Observing Attorney stated to one ore more of the Defendant POLICE OFFICERS, in sum and substance, "You have to get a warrant or let him go."

106.  The Defendant POLICE OFFICERS did not respond.

107.  Observing Attorney asked the Defendant POLICE OFFICERS, in sum and substance, "What are we waiting for, can he go?"

108.  The Defendant POLICE OFFICERS did not respond.

109.  Observing Attorney asked the Defendant POLICE OFFICERS, in sum and substance,

"Who is in charge here, who stopped the vehicle?"

110. The Defendant POLICE OFFICERS did not respond.

111. At or around this time, one of the Defendant POLICE OFFICERS re-approached the driver's side door of The WikiLeaks Truck.

112. The same Defendant POLICE OFFICER stated, in sum and substance, "We're going to need to do an inspection of your truck, so I'm going to need you to step out of the vehicle."

113. Plaintiff CLARK STOECKLEY stated, in sum and substance, "I do not consent to a search."

114. The same Defendant POLICE OFFICER responded, in sum and substance, "We're going to search the truck anyway."

115. Plaintiff CLARK STOECKLEY repeated, in sum and substance, "I do not consent to a search."

116. Observing Attorney stated to Plaintiff CLARK STOECKLEY, in sum and substance, "You do not have to speak to the officers."

117. One of the Defendant POLICE OFFICERS stated to Plaintiff CLARK STOECKLEY, in sum and substance, "If you do not let us search the truck then you will be placed under arrest."

118. Observing Attorney asked the Defendant POLICE OFFICERS, in sum and substance, "What's the basis for the arrest?"

119. The Defendant POLICE OFFICERS did not respond.

120. The Defendant POLICE OFFICERS stated to Plaintiff CLARK STOECKLEY, in sum and substance, "We're not asking for consent anymore. Open the door."

121. Plaintiff CLARK STOECKLEY stated, in sum and substance, "I do not consent to a search."

122. At or around this time, one or more of the Defendant POLICE OFFICERS broke into The WikiLeaks Truck through the passenger's side door.

123. The Defendant POLICE OFFICERS removed Plaintiff CLARK STOECKLEY from The WikiLeaks Truck.

124. Defendant POLICE OFFICER ANGLISANO was standing nearby as the Defendant POLICE OFFICERS removed Plaintiff CLARK STOECKLEY from the WikiLeaks Truck.

125. At no point did Defendant POLICE OFFICER ANGLISANO intervene to prevent the Defendant POLICE OFFICERS' violation of the Plaintiffs' Constitutional Rights.

126. The Defendant POLICE OFFICERS removed Plaintiff ERIK MCGREGOR from The WikiLeaks Truck.

127. Defendant POLICE OFFICER BLANCO was standing nearby as the Defendant POLICE OFFICERS removed Plaintiff ERIK MCGREGOR from The WikiLeaks Truck.

128. At no point did Defendant POLICE OFFICER BLANCO intervene to prevent the Defendant POLICE OFFICERS' violation of the Plaintiffs' Constitutional Rights.

129. One or more of the Defendant POLICE OFFICERS walked Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR over to the side of The WikiLeaks Truck that was facing vehicular traffic on Broadway.

130. One or more of the Defendant POLICE OFFICERS handcuffed and arrested Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

131. At no point before, during, or after the Defendant POLICE OFFICERS unlawful arrests of Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR did any of the individual Defendant POLICE OFFICERS attempt to intervene on Plaintiffs' behalf so as to prevent the violation of Plaintiffs' constitutional rights.

132. Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR asked one or more of the Defendant POLICE OFFICERS, in sum and substance, "What are you all arresting us for?"

133. In response, one or more of the Defendant POLICE OFFICERS stated, in sum and substance, "You'll be told when you receive a summons."

134. In response, one or more of the Defendant POLICE OFFICERS stated, in sum and substance, "You'll be told when you see a judge."

135. Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR were hurt and embarrassed to have been handcuffed and arrested by the Defendant POLICE OFFICERS despite the fact that they had not engaged in any illegal conduct or activity.

136. One or more of the Defendant POLICE OFFICERS applied handcuffs around Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's wrists so tightly that Plaintiffs could neither rotate nor in any way move their wrists separate from the handcuffs.

137. At or around this time, the Defendant POLICE OFFICERS took possession of Plaintiff CLARK STOECKLEY's keys to The WikiLeaks Truck.

138. Defendant POLICE CAPTAIN GARDNER was present throughout some or all of Defendants' interactions with Plaintiffs at or around the time of Plaintiffs' arrest.

139. At no point did Defendant POLICE CAPTAIN GARDNER intervene in order to prevent the Defendant POLICE OFFICERS from violating the Plaintiffs' Constitutional rights as described herein.

## THE DEFENDANT POLICE OFFICERS DRIVE THE WIKILEAKS TRUCK AWAY FROM THE LOCATION OF THE PLAINTIFFS' ARRESTS THEN SEARCH THE VEHICLE

140. Upon information and belief, the Defendant POLICE SERGEANT FLAXMAN and/or Defendant POLICE OFFICER STABILE and/or one or more of the Defendant POLICE OFFICERS drove the WikiLeaks Truck to the intersection of Battery Place and 2nd Place.

141. Upon arrival at Battery Place and 2nd Place, Defendant POLICE OFFICER STABILE, Defendant POLICE OFFICER BONILLA, Defendant POLICE OFFICER BLAZER, and/or

one or more of the Defendant POLICE OFFICERS searched the WikiLeaks Truck.

142.  The Defendant POLICE OFFICERS who performed the searched did not find anything illegal in the WikiLeaks Truck.

143.  The WikiLeaks Truck did not contain anything illegal.

144.  At some point following this search, the WikiLeaks Truck would later be moved to the intersection of Varick Street and North Moore Street in a bus stop lane.

145.  The Defendant POLICE OFFICERS did not provide Plaintiff CLARK STOECKLEY with accurate information as to how he could reclaim the WikiLeaks Truck.

146.  The Defendant POLICE OFFICERS indicated that Plaintiff CLARK STOECKLEY could retrieve the WikiLeaks Truck from Mike's Towing.

147.  On information and belief, the Defendant POLICE OFFICERS, purposefully hid The WikiLeaks Truck from Plaintiff CLARK STOECKLEY as retaliation against Plaintiff CLARK STOECKLEY for exercising his First Amendment rights in owning and displaying The WikiLeaks Truck, a mobile artwork that makes the general public more aware of an entity that publishes private, secret, and classified information, and the plight of PFC Bradley Manning.

148.  Upon information and belief, the Defendant POLICE OFFICERS elected to, in essence, hide The WikiLeaks Truck from Plaintiff CLARK STOECKLEY in order to retaliate against him, due primarily or in part due to the fact that they could do so with impunity.

149.  The Defendant POLICE OFFICERS believed they could retaliate against Plaintiff CLARK STOECKLEY with impunity due primarily or in part due to the NYPD's "Blue Wall of Silence."

150.  The "Blue Wall of Silence" refers to the custom or practice of members of the NYPD, wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City POLICE OFFICERS to regularly condone and cover up police abuse of power by telling false and incomplete stories.

151.  On information and belief, the Defendant POLICE OFFICERS specifically desired to retaliate against Plaintiff CLARK STOECKLEY for exercising his First Amendment Protected rights due, in large part, to WikiLeaks' fundamental incongruences with the NYPD's "Blue Wall of Silence."

152.  Said otherwise, whereas WikiLeaks seeks to expose and publish what would otherwise be governmental entities' private, secret, or classified information, the NYPD's "Blue Wall of Silence," conversely, operates for the specific purpose of concealing and keeping "in-house" the NYPD's private, secret, or classified information.

153.  On information and belief, such private, secret, or classified information of the NYPD includes, though is not limited to: officer misconduct or corrupt activities that relate to retaliation against civilians for exercising their First Amendment protected rights.

154.  Further evidence of the NYPD's use of the "Blue Wall of Silence" to obtain and thereafter keep private and secret classified information is demonstrated through the NYPD's

surveillance of innocent Americans and liberal protests groups.[3]

155.  Further evidence of the NYPD's use of the "Blue Wall of Silence" to obtain and thereafter keep private and secret classified information is demonstrated through the fact that the NYPD keeps certain documents private from the New York City Counsel, Congress, and the White House.[4]

156.  Further evidence of the NYPD's use of the "Blue Wall of Silence" to obtain and thereafter keep private and secret classified information is demonstrated through the NYPD's act of forcing a whistleblowing officer into a mental health facility.[5]

157.  At or around this time, one or more of the Defendant POLICE OFFICERS walked Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR to a marked NYPD police car and put Plaintiffs into same.

158.  Both Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR asked the Defendant POLICE OFFICERS to loosen the handcuffs that had been placed around their wrists.

159.  Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR made the same request to the Defendant POLICE OFFICERS on at least two more occasions.

160.  The Defendant POLICE OFFICERS —— following at least three requests from Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR —— loosened the Plaintiffs handcuffs.

161.  Both Plaintiffs suffered cuts and bruises on their wrists as a result of the Defendant POLICE OFFICERS' acts of handcuffing Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's wrists so tightly that they could neither rotate nor in any way move their wrists separate from the handcuffs.

162.  Plaintiff ERIK MCGREGOR, to date, still has lingering pain in his hands and wrists as a result of the plastic flex-cuffs that the Defendant POLICE OFFICERS placed tightly around his wrists.

163.  At or around this time, the Defendant POLICE OFFICERS drove Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR to One Police Plaza.

164.  Shortly thereafter, the Defendant POLICE OFFICERS and Plaintiffs arrived at One Police Plaza.

165.  One or more of the Defendant POLICE OFFICERS walked Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR into One Police Plaza.

---

[3] Friedersdorf, Conor, "Is the NYPD Worse Than the NSA?" The Atlantic, August 26, 2013. Article incorporated by reference herein and available online at:
http://www.theatlantic.com/politics/archive/2013/08/is-the-nypd-worse-than-the-nsa/279020/
[4] Apuzzo, Matt & Goldman, Adamn, "The NYPD Division of Un-American Activities" New York Magazine, August 25, 2013. Article incorporated by reference herein and available online at:
http://nymag.com/news/features/nypd-demographics-unit-2013-9/ - print
[5] Rayman, Graham, "NYPD Tapes 4: The Whistleblower, Adrian Schoolcraft," The Village Voice, June 15, 2010. Article incorporated by reference herein and available online at: http://www.villagevoice.com/2010-06-15/news/adrian-school-craft-nypd-tapes-whistleblower/

166.  One or more of the Defendant POLICE OFFICERS took photos of Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

167.  One or more of the Defendant POLICE OFFICERS took down Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's fingerprints.

168.  One or more of the Defendant POLICE OFFICERS placed Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR into one small holding cell within One Police Plaza with approximately five other people.

169.  After a time, one or more of the Defendant POLICE OFFICERS individually removed Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR from the same aforementioned holding cell.

170.  One or more of the Defendant POLICE OFFICERS searched Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

171.  The Defendant POLICE OFFICERS' searches of Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR did not reveal that either Plaintiff was in possession of any weapons or controlled substances.

172.  At or around this time, one or more members of one Police Plaza's Property Clerk Division took possession of Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's cellphones, wallets, and other personal property and belongings.

173.  At or around this time, Defendant POLICE OFFICER BOCCIO used the NYPD's Property and Evidence Tracking System ("PETS") to enter and invoice some or all of Plaintiff CLARK STOECKLEY's personal property and belongings.

174.  Defendant POLICE OFFICER BOCCIO's invoicing of Plaintiff CLARK STOECKLEY's property was conducted in a manner that caused, in whole or in part, Plaintiff CLARK STOECKLEY to be deprived of the use of the use of The WikiLeaks Truck for approximately six (6) days.

175.  Defendant POLICE OFFICER BOCCIO's invoicing of Plaintiff CLARK STOECKLEY's property was conducted in a manner that prevented, in whole or in part, Plaintiff CLARK STOECKLEY from recovering other personal property and belongings.

176.  Defendant POLICE SERGEANT SANTANGELO approved Defendant POLICE OFFICER BOCCIO's entering and invoicing of Plaintiff CLARK STOECKLEY's property.

177.  At or around this time, Defendant POLICE OFFICER VENTURA used PETS to invoice some or all of Plaintiff CLARK STOECKLEY's personal property and belongings.

178.  Defendant POLICE OFFICER VENTURA's invoicing of Plaintiff CLARK STOECKLEY's property was conducted in a manner that caused, in whole or in part, Plaintiff CLARK STOECKLEY to be deprived of The WikiLeaks Truck for approximately six (6) days.

179.  Defendant POLICE OFFICER VENTURA's invoicing of Plaintiff CLARK STOECKLEY's property was conducted in a manner that prevented, in whole or in part, Plaintiff CLARK STOECKLEY from recovering other personal property and belongings.

180.  At or around this time, approximately 2:00pm, the Defendant POLICE OFFICERS

placed Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR into a second holding cell within One Police Plaza with approximately 100 other people.

181.   There the Defendant POLICE OFFICERS detained Plaintiff ERIK MCGREGOR for approximately another six (6) hours.

182.   There the Defendant POLICE OFFICERS detained Plaintiff CLARK STOECKLEY for approximately another eight (8) hours.

183.   The Defendant POLICE OFFICERS still had not told either Plaintiff CLARK STOECKLEY or Plaintiff ERIK MCGREGOR why they had been arrested.

184.   At approximately, 8:00pm, one or more of the Defendant POLICE OFFICERS removed Plaintiff ERIK MCGREGOR from the second holding cell within One Police Plaza.

185.   The Defendant POLICE OFFICERS issued Plaintiff ERIK MCGREGOR a Desk Appearance Ticket.

186.   The Defendant POLICE OFFICERS then released Plaintiff ERIK MCGREGOR from One Police Plaza.

187.   At or around this time, Plaintiff CLARK STOECKLEY was still confined within the second holding cell of One Police Plaza.

188.   Plaintiff CLARK STOECKLEY, while still confined within the second holding cell of One Police Plaza, on multiple occasions, asked one or more of the Defendant POLICE OFFICERS, in sum and substance, "What am I being charged with?"

189.   The Defendant POLICE OFFICERS ignored Plaintiff CLARK STOECKLEY.

190.   At or around this time, one or more of the Defendant POLICE OFFICERS issued Plaintiff CLARK STOECKLEY three traffic citations.

191.   All three of these citations were dismissed on or around February 1, 2012.

192.   At approximately 10:00pm, the Defendant POLICE OFFICERS transferred Plaintiff CLARK STOECKLEY from One Police Plaza to Manhattan Central Booking located at 100 Centre Street ("Central Booking").

193.   The Defendant POLICE OFFICERS used a police van to transfer Plaintiff CLARK STOECKLEY as well as approximately ten other arrestees.

194.   One or more of the Defendant POLICE OFFICERS handcuffed Plaintiff CLARK STOECKLEY and the other arrestees behind their backs before placing them in the aforementioned police van.

195.   The Defendant POLICE OFFICERS again applied handcuffs to Plaintiff CLARK STOECKLEY's wrists so tightly that he could neither rotate nor in any way move his wrists separate from the handcuffs.

196.   At or around the time, The Defendant POLICE OFFICERS chained Plaintiff CLARK STOECKLEY and the other arrestees together.

197.   The Defendant POLICE OFFICERS allowed neither Plaintiff CLARK STOECKLEY

nor any of the other arrestees of the use of a seatbelt while in the police van.

198.  At approximately 10:30pm, the Defendant POLICE OFFICERS and Plaintiff CLARK STOECKLEY arrived at Central Booking.

199.  Shortly thereafter, one or more of the Defendant POLICE OFFICERS walked Plaintiff CLARK STOECKLEY into the building.

200.  One or more of the Defendant POLICE OFFICERS grabbed a device used to record images of individuals' irises ("iris scanner").

201.  On information and belief, the NYPD uses iris scanners on arrestees as a mater of internal policy only, with no legislative authority to do so.

202.  One or more of the Defendant POLICE OFFICERS ordered Plaintiff CLARK STOECKLEY to allow the Defendant POLICE OFFICERS to record images of his irises.

203.  Plaintiff CLARK STOECKLEY told one or more of the Defendant POLICE OFFICERS, in sum and substance, "I will not allow you to photograph my irises."

204.  In response, one or more of the Defendant POLICE OFFICERS falsely stated, in sum and substance, "You will not see a judge until we scan your eyes."

205.  In response, one or more of the Defendant POLICE OFFICERS stated, in sum and substance, "We will have to detain you for another day if we don't scan your eyes."

206.  On information and belief, the Defendant POLICE OFFICER's comments were made implicitly in reference to the NYPD's constitutionally-violative custom, policy, or practice of detaining individuals who refuse to submit to iris photos longer than individuals who submit to iris photos.[6]

207.  At or around this time, the Defendant POLICE OFFICER who was holding the iris scanner stepped closer to Plaintiff CLARK STOECKLEY.

208.  The same Defendant POLICE OFFICER used the iris scanner to take a photograph of Plaintiff CLARK STOECKLEY's irises.

209.  Plaintiff CLARK STOECKLEY had, moments prior, explicitly and unambiguously denied consent to allow the Defendant POLICE OFFICERS to photograph his irises.

210.  The individual Defendant POLICE OFFICERS had, moments prior, heard and understood Plaintiff CLARK STOECKLEY's refusal of consent, but forced Plaintiff CLARK STOECKLEY to submit to having his irises photographed.

211.  At no point before this act did Plaintiff CLARK STOECKLEY consent to the Defendant POLICE OFFICERS act of using the iris scanner to take a photograph of his irises.

212.  At or around this time, the Defendant POLICE OFFICERS placed Plaintiff CLARK STOECKLEY into a holding cell within Central Booking.

---

[6] Moynihan, Colin, "Some Who Decline an Optional Iris Photo Are Kept Longer in Jail, Critics Say" New York Times, February 12, 2012. Article incorporated by reference herein and available online at: http://www.nytimes.com/2012/02/13/nyregion/new-objections-to-nypds-iris-photographing-program.html

213. There the Defendant POLICE OFFICERS detained Plaintiff CLARK STOECKLEY for approximately another sixteen (16) hours.

214. At or around 5:00pm the next day, Friday, November 18, 2011, the Defendant POLICE OFFICERS released Plaintiff CLARK STOECKLEY from Central Booking.

215. Shortly thereafter, Plaintiff CLARK STOECKLEY appeared before the court.

216. Plaintiff CLARK STOECKLEY, then, for the first time, was informed that he had been charged with Obstruction of Governmental Administration in the Second Degree ("O.G.A. 2"), a class A misdemeanor.

217. Defendant POLICE OFFICER BOCCIO falsely swore out the criminal complaint charging Plaintiff CLARK STOECKLEY with O.G.A. 2.

218. At or around 6:00pm, Friday, November 18, 2011 —— approximately thirty (30) hours after the Defendant POLICE OFFICERS' initial stop of Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR —— the Defendant POLICE OFFICERS released Plaintiff CLARK STOECKLEY from their custody.

219. Throughout the two months leading up to the incident and arrest in question, Plaintiff CLARK STOECKLEY had been utilizing either a Friend's apartment, or The WikiLeaks Truck for temporary housing.

220. As the Defendant POLICE OFFICERS had seized The WikiLeaks Truck from Plaintiff CLARK STOECKLEY, Plaintiff CLARK STOECKLEY could not return to The WikiLeaks Truck after being released from the Defendant POLICE OFFICERS' custody.

221. Plaintiff CLARK STOECKLEY, as a result of the facts described in the two preceding paragraphs, went to his Friend's apartment after being released from the Defendant POLICE OFFICERS' custody.

## PLAINTIFF CLARK STOECKLEY'S EFFORTS
## TO RECLAIM THE WIKILEAKS TRUCK

222. As previously stated, one or more members of One Police Plaza's Property Clerk Division took possession of Plaintiff CLARK STOECKLEY's wallet, cellphone, and other personal belongings while Plaintiff CLARK STOECKLEY was present within One Police Plaza.

223. One Police Plaza's Property Clerk Division is not open on weekends.

224. As the Defendant POLICE OFFICERS released Plaintiff CLARK STOECKLEY from their custody at or around 6:00pm on Friday November 18, 2011, Plaintiff CLARK STOECKLEY could not re-collect his wallet, cellphone, and other personal belongings from One Police Plaza until the following Monday morning, November 21, 2011.

225. In addition and for the same reasons, Plaintiff CLARK STOECKLEY could not ask employees of One Police Plaza's Property Clerk Division about the location of The WikiLeaks Truck until the following Monday morning, November 21, 2011.

226. The following day, Saturday, November 19, 2011, Plaintiff CLARK STOECKLEY —— relying on Defendant POLICE OFFICER BOCCIO's previous statement that the Defendant

POLICE OFFICERS would use Mike's Towing to tow away The WikiLeaks Truck —— travelled to Mike's Towing in order to recover The WikiLeaks Truck.

227.  Shortly after Plaintiff CLARK STOECKLEY's arrival at Mike's Towing, one or more employees or agents of Mike's Towing told Plaintiff CLARK STOECKLEY, in sum and substance, that they had not seen The WikiLeaks Truck.

228.  At or around this time, one or more employees or agents of Mike's Towing employees told Plaintiff CLARK STOECKLEY that, in sum and substance, no one from the NYPD had contacted them in regards to The WikiLeaks Truck.

229.  Plaintiff CLARK STOECKLEY was hurt and upset that Defendant POLICE OFFICER BOCCIO had misinformed him in regards to where the Defendant POLICE OFFICERS would have The WikiLeaks Truck towed.

230.  Plaintiff CLARK STOECKLEY was hurt and upset that neither Defendant POLICE OFFICER BOCCIO nor any of the Defendant POLICE OFFICERS present had contacted him following the November 17 incident and arrest in question to correct the misinformation that Defendant POLICE OFFICER BOCCIO had given him.

231.  Plaintiff CLARK STOECKLEY was hurt and upset that neither Defendant POLICE OFFICER BOCCIO nor any of the Defendant POLICE OFFICERS present had contacted him following the November 17th incident and arrest in question, in order to inform him of where The WikiLeaks Truck had been transported to.

232.  Following Plaintiff CLARK STOECKLEY's fruitless visit to Mike's Towing, Plaintiff CLARK STOECKLEY returned to his Friend's apartment.

233.  The Defendant POLICE OFFICERS deprived Plaintiff CLARK STOECKLEY of the use of The WikiLeaks Truck all day Friday, November 18, 2011.

234.  The Defendant POLICE OFFICERS deprived Plaintiff CLARK STOECKLEY of the use of The WikiLeaks Truck all day Saturday, November 19, 2011.

235.  The Defendant POLICE OFFICERS deprived Plaintiff CLARK STOECKLEY of the use of The WikiLeaks Truck all day Sunday November 20, 2011.

236.  On Monday, November 21, 2011, Plaintiff CLARK STOECKLEY returned to One Police Plaza in order to re-collect his wallet, cellphone, and other personal belongings from One Police Plaza's Property Clerk Division.

237.  Plaintiff CLARK STOECKLEY also, at this time, expected to either find The WikiLeaks Truck or receive accurate and factual information concerning The WikiLeaks Truck's location.

238.  Plaintiff CLARK STOECKLEY received neither.

239.  Plaintiff CLARK STOECKLEY was hurt, upset, and frustrated by the Defendant POLICE OFFICERS' conduct of, in essence, hiding The WikiLeaks Truck from him.

240.  The Defendant POLICE OFFICERS deprived Plaintiff CLARK STOECKLEY of the use of The WikiLeaks Trucks all day Monday, November 21, 2011.

241.  On Tuesday, November 22, 2011, Plaintiff CLARK STOECKLEY continued his

search for The WikiLeaks Truck.

242.  Plaintiff CLARK STOECKLEY again spoke with officers stationed at One Police Plaza and employees and agents of One Police Plaza's Property Clerk Division.

243.  Plaintiff CLARK STOECKLEY still did not receive any information relating to the whereabouts of The WikiLeaks Truck.

244.  On the evening of the same date, Tuesday, November 22, 2011, Plaintiff CLARK STOECKLEY received word from a friend that the WikiLeaks Truck had been spotted at the New York City Police Tow Impound ("NYPD Impound") located near 38th Street and 12th Avenue.

245.  The Defendant POLICE OFFICERS deprived Plaintiff CLARK STOECKLEY of the use of The WikiLeaks Truck all day Tuesday, November 22, 2011.

246.  The following morning, Wednesday, November 23, 2011, Plaintiff CLARK STOECKLEY appeared at the NYPD Impound.

247.  Shortly thereafter, Plaintiff CLARK STOECKLEY found The WikiLeaks Truck.

248.  Plaintiff CLARK STOECKLEY was forced to pay four hundred and seventy-five dollars ($475.00) in towing fees before he could re-take possession of The WikiLeaks Truck.

249.  The WikiLeaks Truck was also graced with two parking tickets.

250.  Plaintiff CLARK STOECKLEY would later have to go before an administrative law judge in order to have the same parking tickets dismissed.

251.  When Plaintiff CLARK STOECKLEY finally did reclaim possession of The WikiLeaks Truck —— owing to the fact that The WikiLeaks Truck's battery was dead —— he was unable to drive the vehicle away from the NYPD Impound.

252.  After The WikiLeaks Truck received a jump, Plaintiff CLARK STOECKLEY began driving the vehicle away from the NYPD Impound.

253.  The WikiLeaks Truck stalled before Plaintiff CLARK STOECKLEY could completely exit the NYPD Impound.

254.  At or around this time, one or more of the Defendant POLICE OFFICERS present at the NYPD Impound told Plaintiff CLARK STOECKLEY, in sum and substance, "You cannot park here."

255.  In response, Plaintiff CLARK STOECKLEY explained, in sum and substance, "I'm not trying to park here."

256.  At or around this time, the same Defendant POLICE OFFICER threatened to arrest Plaintiff CLARK STOECKLEY.

257.  Shortly thereafter, Plaintiff CLARK STOECKLEY was able to re-start The WikiLeaks Truck and successfully drive away from the NYPD Impound.

258.  On information and belief, after the Defendant POLICE OFFICERS stopped and arrested Plaintiff CLARK STOECKLEY on the afternoon of November 17, 2011, one or more

of the Defendant POLICE OFFICERS transported The WikiLeaks Truck to a location nearby the intersection of Varick and North Moore Streets, and parked the truck illegally in a bus stop lane.

259. An image depicting the WikiLeaks Truck being towed away from the Varick Street and North Moore Street is attached hereto as **Exhibit C.**

260. The NYPD City-Wide Traffic Task Force Enforcement tow truck that towed the WikiLeaks Truck away from Varick Street and North Moore Street was marked "5997".

261. Plaintiff CLARK STOECKLEY was not arrested near the intersection of Varick and North Moore Streets.

262. The keys to The WikiLeaks Truck were seized from Plaintiff CLARK STOECKLEY by one or more Defendant POLICE OFFICERS at or around the time of Plaintiff CLARK STOECKLEY's arrest.

263. On information and belief, one or more Defendant POLICE OFFICERS left The WikiLeaks Truck near the intersection of Varick Street and North Moore Street.

264. On information and belief, the Defendant POLICE OFFICERS parked The WikiLeaks Truck both in front of a fire hydrant as well as within a bus lane near the intersection of Varick Street and North Moore Street.

265. On information and belief, the Defendant POLICE OFFICERS parked The WikiLeaks Truck near the intersection of Varick Street and North Moore Street knowing that it would be ticketed and towed.

266. On information and belief, the Defendant POLICE OFFICERS parked The WikiLeaks Truck near the intersection of Varick Street and North Moore Street knowing that Plaintiff CLARK STOECKLEY would eventually be charged a large sum of money in towing fees in order to recover possession of The WikiLeaks Truck.

267. On information and belief, the Defendant POLICE OFFICERS parked The WikiLeaks Truck near the intersection of Varick Street and North Moore Street knowing that Plaintiff CLARK STOECKLEY would have to either pay a large sum of money for the traffic tickets that the truck was likely to receive, or to expend a substantial amount of time and energy to go before an administrative law judge in order to have the same tickets dismissed.

268. On information and belief, the Defendant POLICE OFFICERS parked The WikiLeaks Truck near the intersection of Varick Street and North Moore Street in order to retaliate against Plaintiff CLARK STOECKLEY for lawfully exercising his First Amendment protected rights by owning and displaying The WikiLeaks Truck.

269. Plaintiff CLARK STOECKLEY was deprived of the use and possession of The WikiLeaks Truck for approximately six (6) days.

270. The Defendant POLICE OFFICERS falsely charged Plaintiff CLARK STOECKLEY with violating two counts of New York Transportation Law §140.02, uninspected motor vehicle.

271. The Defendant POLICE OFFICERS falsely charged Plaintiff CLARK STOECKLEY with violating New York State Vehicle and Traffic Law §401.1 1a1, improper registration as

passenger plates.

272.   Plaintiff CLARK STOECKLEY committed neither offense, nor did Plaintiff commit any other violation or crime.

273.   Nonetheless, Plaintiff CLARK STOECKLEY was forced to appear before the Court on or around February 1, 2012 to answer the Defendant POLICE OFFICERS' baseless charges.

274.   All NYS VTL charges against Plaintiff CLARK STOECKLEY were dismissed on February 1, 2012.

275.   The Defendant POLICE OFFICERS falsely charged Plaintiff CLARK STOECKLEY under New York State Penal Law §195.05, Obstruction of Governmental Administration in the Second Degree ("O.G.A. 2"), a Class A Misdemeanor.

276.   Plaintiff CLARK STOECKLEY was forced to appear before the Court on or around January 25, 2012 to answer the Defendant POLICE OFFICERS' baseless O.G.A. 2 charge.

277.   Plaintiff CLARK STOECKLEY was forced to appear before the Court on or around February 1, 2012 to answer the Defendant POLICE OFFICERS' baseless O.G.A. 2 charge.

278.   Plaintiff CLARK STOECKLEY was forced to appear before the Court on or around March 12, 2012 to answer the Defendant POLICE OFFICERS' baseless O.G.A. 2 charge.

279.   The O.G.A. 2 charge against Plaintiff CLARK STOECKLEY was dismissed on May 7, 2012.

280.   The Defendant POLICE OFFICERS falsely charged Plaintiff ERIK MCGREGOR with O.G.A. 2.

281.   Defendant POLICE OFFICER BOCCIO falsely swore out the Desk Appearance Ticket charging Plaintiff ERIK MCGREGOR with O.G.A.2.

282.   Plaintiff ERIK MCGREGOR was forced to appear before the court on or around January 25, 2012.

283.   Plaintiff ERIK MCGREGOR was forced to appear before the court on or around February 8, 2012.

284.   Plaintiff ERIK MCGREGOR was forced to appear before the court on or around March 12, 2012.

285.   The O.G.A. 2 charge against Plaintiff ERIK MCGREGOR was dismissed on May 7th, 2012.

## ADDITIONAL INFRINGEMENT UPON PLAINTIFF CLARK STOECKLEY'S EXERCISE OF HIS FIRST AMENDMENT PROTECTED RIGHT TO OWN AND DISPLAY THE WIKILEAKS TRUCK

286.   On the morning of October 17, 2011, Plaintiff CLARK STOECKLEY parked The WikiLeaks Truck near Zuccotti Park on Cedar Street.

287.   On information and belief, Defendant POLICE LIEUTENANT KONSTANTINIDIS wrote The Wiki Leaks Truck a ticket for allegedly parking in a no standing zone.

288. On information and belief, Defendant POLICE OFFICER MAZZOLA and/or Defendant POLICE LIEUTENANT KONSTANTINIDIS made the decision to ticket The WikiLeaks Truck, for allegedly parking in a no standing zone.

289. While Plaintiff CLARK STOECKLEY was in Zuccotti Park, someone told him that The WikiLeaks truck had been ticketed.

290. Plaintiff CLARK STOECKLEY went to check on The WikiLeaks Truck.

291. Upon arrival, Plaintiff CLARK STOECKLEY spotted Defendant POLICE LIEUTENANT KONSTANTINIDIS and Defendant POLICE OFFICER MAZZOLA standing near The WikiLeaks Truck.

292. Defendant POLICE LIEUTENANT KONSTANTINIDIS stated to Plaintiff CLARK STOECKLEY, in sum and substance, "Give me your license and registration."

293. At or around this time, Plaintiff CLARK STOECKLEY entered The Wiki Leaks Truck in order to collect his driver's license as well as the State of Maryland registration documents affiliated with The WikiLeaks Truck.

294. At or around this time, Defendant POLICE LIEUTENANT KONSTANTINIDIS and one more of the Defendant POLICE OFFICERS began placing medal barricades around The WikiLeaks Truck.

295. Plaintiff CLARK STOECKLEY gave his license and registration to Defendant POLICE LIEUTENANT KONSTANTINIDIS.

296. Plaintiff CLARK STOECKLEY was carrying the keys to The WikiLeaks Truck in his hands.

297. Defendant POLICE LIEUTENANT KONSTANTINIDIS grabbed The WikiLeaks Truck's keys out of Plaintiff CLARK STOECKLEY's hands.

298. Defendant POLICE LIEUTENANT KONSTANTINIDIS stated to Plaintiff CLARK STOECKLEY, in sum and substance, "There is a tow truck coming to take The WikiLeaks Truck away."

299. On information and belief, Defendant POLICE OFFICER MAZZOLA and/or Defendant POLICE LIEUTENANT KONSTANTINIDIS made the decision to have the WikiLeaks Truck towed away.

300. Plaintiff CLARK STOECKLEY asked Defendant POLICE LIEUTENANT KONSTANTINIDIS to return his keys so that he, Plaintiff, could leave.

301. Defendant POLICE LIEUTENANT KONSTANTINIDIS refused to do so.

302. Although Plaintiff CLARK STOECKLEY was prepared to move The WikiLeaks Truck before the tow truck arrived, the Defendant POLICE OFFICER MAZZOLA and Defendant POLICE LIEUTENANT KONSTANTINIDIS refused to allow Plaintiff to drive The WikiLeaks Truck away.

303. Approximately ten minutes later a tow truck, driven by Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT" arrived.

304.  Plaintiff CLARK STOECKLEY was recording video of this Incident.

305.  Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT" approached Plaintiff CLARK STOECKLEY and falsely stated to Plaintiff that it was illegal to record the Defendant POLICE OFFICERS' conduct.

306.  Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT's" comment was made in direct contradiction to Procedure No. 208-30, *Observers at the Scene of Police Incident*" of the NYPD Patrol Guide, which provides that recording of police activity is not, in and of itself, illegal.

307.  Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT" drove The WikiLeaks Truck a short distant so that the Defendant POLICE OFFICERS could tow The WikiLeaks Truck away.

308.  While Defendant POLICE OFFICER "JOHN DOE NYPD TOW TRUCK DRIVER FROM 10/17/11 INCIDENT" drove The WikiLeaks Truck a short distance and prepared to tow the WikiLeaks Truck away, Defendant POLICE OFFICER SANABRIA, Defendant POLICE OFFICER FELICIANO, and Defendant POLICE SERGEANT "JANE DOE POLICE SERGEANT FROM 10/17/11 INCIDENT" were present and did not intervene to prevent the violation of Plaintiff's Constitutional Rights.

309.  Throughout this time, on multiple occasions, Plaintiff CLARK STOECKLEY requested that the Defendant POLICE OFFICERS provide him with the keys to the WikiLeaks Truck, so that Plaintiff could drive the WikiLeaks Truck away.

310.  The Defendant POLICE OFFICERS ignored each one of Plaintiff CLARK STOECKLEY's requests that the Defendant POLICE OFFICERS give him his keys back.

311.  At or around this time, Plaintiff CLARK STOECKLEY asked that Defendant POLICE LIEUTENANT KONSTANTINIDIS provide his name and shield number.

312.  Defendant POLICE LIEUTENANT KONSTANTINIDIS did not provide Plaintiff CLARK STOECKLEY with his name and shield number.

313.  Defendant POLICE LIEUTENANT KONSTANTINIDIS refused provide Plaintiff CLARK STOECKLEY with his name and shield number in violation of *Procedure No. 203-09 Public Contact – General*, of the NYPD Patrol Guide, which requires that NYPD members of service "Courteously and clearly state [their] rank, name, shield number and command, or otherwise provide them, to anyone who requests you to do so [and] [a]llow the person ample time to note this information."

314.  The Defendant POLICE OFFICERS towed the WikiLeaks Truck away, thereby depriving Plaintiff CLARK STOECKLEY of lawful possession of same for approximately three hours.

315.  Of the Defendant POLICE OFFICERS present, not one of the Defendant POLICE OFFICERS allowed Plaintiff CLARK STOECKLEY to execute a *Field Release Agreement ("FRA")*, as described in *Procedure No. 209-32* of the NYPD Patrol Guide.

316.  Multiple other trucks of similar size, but with corporate branding were parked in the same area as the WikiLeaks Truck, but were neither ticketed nor towed.

317.  Upon information and belief, Defendant POLICE OFFICER MAZZOLA and Defendant POLICE LIEUTENANT KONSTANTINIDIS decided to ticket and subsequently have The WikiLeaks Truck towed away because of the WikiLeaks Truck's First Amendment expression.

318.  In order to retrieve the WikiLeaks Truck, Plaintiff CLARK STOECKLEY traveled to the NYPD's Manhattan Tow & Impound, located at Pier 76, near 12th Avenue and 34th Street.

319.  Plaintiff CLARK STOECKLEY was forced to pay approximately $360.00 in towing fees in order to recover The WikiLeaks Truck.

## THE DEFENDANT POLICE OFFICERS' PATTERN OF TARGETED INFRINGEMENT UPON PLAINTIFF CLARK STOECKLEY'S LAWFUL EXERCISE OF HIS FIRST AMENDMENT PROTECTED RIGHTS AND RESULTING NOVEMBER 17, 2011 STOP AND ARREST OF PLAINTIFF CLARK STOECKLEY AND PLAINTIFF ERIK MCGREGOR

320.  The Defendant POLICE OFFICERS' September 17, 2011 and October 17, 2011 infringements upon Plaintiff CLARK STOECKLEY's lawful exercise of his First Amendment protected rights evidence a pattern of targeting Plaintiff CLARK STOECKLEY on account of his ownership and display of The WikiLeaks Truck.

321.  This pattern of infringement upon Plaintiff CLARK STOECKLEY's First Amendment protected rights was repeated and increased in severity when the Defendant POLICE OFFICERS stopped and arrested Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR on November 17, 2011.

322.  Said otherwise, when the Defendant POLICE OFFICERS realized that issuing Plaintiff CLARK STOECKLEY traffic citations would not deter Plaintiff CLARK STOECKLEY from owning and displaying The WikiLeaks Truck, the Defendant POLICE OFFICERS, in hopes of achieving the same deterrence, arrested and detained Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

323.  Further, when the Defendant POLICE OFFICERS realized that issuing Plaintiff CLARK STOECKLEY traffic citations would not deter Plaintiff CLARK STOECKLEY from owning and displaying The WikiLeaks Truck, the Defendant POLICE OFFICERS, in hopes of achieving the same deterrence, deprived Plaintiff CLARK STOECKLEY of possession of The WikiLeaks Truck for approximately six (6) days.

324.  On information and belief, the Defendant POLICE OFFICERS' November 17, 2011 stop and arrests of Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR were illegal "contempt of cop" arrests.

325.  On information and belief, Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGRREGOR's Obstruction of Governmental Administration in the Second Degree charges were "cover-charges" created in order to justify the Defendant POLICE OFFICERS' illegal "contempt of cop" arrests of Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

326.  On information and belief, Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's Obstruction of Governmental Administration in the Second Degree charges were "cover-charges" created in order to retaliate against Plaintiff CLARK STOECKLEY's lawful exercise of his First Amendment protected right to own and display The WikiLeaks

Truck.

327.   On information and belief, the Defendant POLICE OFFICERS' arrests of Plaintiff ERIK MCGREGOR and Plaintiff CLARK STOECKLEY were motivated, either wholly or in part, by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant THE CITY OF NEW YORK.

328.   On information and belief, the Defendant POLICE OFFICERS' arrests of Plaintiff ERIK MCGREGOR and Plaintiff CLARK STOECKLEY were motivated, either wholly or in part, by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant THE CITY OF NEW YORK's police department.

329.   Further information regarding these aforesaid customs and practices is set forth in the appendix attached to the Plaintiffs' Initial Complaint, "ADDITIONAL FACTS PLEADINGS IN SUPPORT OF MONELL CLAIMS" which is herein incorporated by reference.

330.   As a result of the Defendant POLICE OFFICERS' constitutionally-violative conduct, Plaintiff ERIK MCGREGOR was unlawfully arrested and detained for approximately six (6) hours.

331.   As a result of the Defendant POLICE OFFICERS' constitutionally-violative conduct, Plaintiff CLARK STOECKLEY was unlawfully arrested and detained for approximately thirty (30) hours.

332.   As a result of the Defendant POLICE OFFICERS' constitutionally-violative conduct, Plaintiff CLARK STOECKLEY was unlawfully deprived of The WikiLeaks Truck for approximately six (6) days.

333.   As a result of Defendant POLICE OFFICERS' constitutionally-violative conduct, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR sustained, *inter alia*, mental injuries, emotional distress, embarrassment, loss of property, damage to property, humiliation, and deprivation of their constitutional rights.

334.   As a result of the foregoing, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR demand judgment against Defendants in a sum of money to be determined at trial.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

335.   Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

336.   All of the aforementioned acts of the Defendant CITY OF NEW YORK and Defendant POLICE OFFICERS, their agents, servants and employees, were carried out under the color of state law.

337.   All of the aforementioned acts deprived Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the

United States of America, and in violation of 42 U.S.C. § 1983.

338. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

339. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

340. The Defendant POLICE OFFICERS and Defendant CITY OF NEW YORK collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

341. All of the aforementioned acts deprived Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

342. As a result, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR demand judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983

343. Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

344. As a result of the aforesaid conduct by Defendants, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR were subjected to illegal, improper and false arrests by the Defendant POLICE OFFICERS and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege, or consent.

345. As a result of the foregoing, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR's liberty was restricted for extended periods of time; they were put in fear for their safety and were caused to suffer embarrassment and humiliation, without probable cause.

346. As a result, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR demand judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
### FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

347. Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

348. The Defendant POLICE OFFICERS had an affirmative duty to intervene on Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR' behalf to prevent the above-referred violations of their constitutional rights.

349. The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's behalf to prevent the violation of their constitutional rights despite having had realistic opportunities to do so.

350. The individual Defendant POLICE OFFICERS failed to intervene on Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's behalf to prevent the violation of their constitutional rights despite having substantially contributed to the circumstances within which Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's rights were violated by the Defendant POLICE OFFICERS' affirmative conduct.

351. As a result of the aforementioned conduct of the individual defendants, Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's constitutional rights were violated.

352. As a result, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR demand judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

353. Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

354. The Defendant POLICE OFFICERS utilized excessive force against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR by unnecessarily handcuffing them.

355. The Defendant POLICE OFFICERS utilized excessive force against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR by handcuffing them without probable cause for Plaintiffs' arrest.

356. The Defendant POLICE OFFICERS utilized excessive force against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR by applying handcuffs around Plaintiff CLARK STOECKLEY's and Plaintiff ERIK MCGREGOR's wrists so tightly that Plaintiffs could neither rotate nor in any way move their wrists separate from the handcuffs.

357. The Defendant POLICE OFFICERS utilized excessive force against Plaintiff CLARK STOECKLEY by handcuffing him behind his back, chaining him to other individuals within a police van, and not allowing him the use of a seatbelt while in the same police van while en route from One Police Plaza to Central Booking.

358. The Defendant POLICE OFFICERS simultaneously utilized excessive force against Plaintiff CLARK STOECKLEY as well as violated his Fourth Amendment protected rights by infringing upon his reasonable expectation of privacy of personal information by forcing Plaintiff CLARK STOECKLEY to submit to a photograph of his irises.

359. The level of force employed by the Defendant POLICE OFFICERS against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR was objectively unreasonable.

360. The force employed by the Defendant POLICE OFFICERS against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR did not advance any proper government objective.

361. As a result of the aforementioned conduct of the Defendant POLICE OFFICERS, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR were subjected to excessive force and sustained physical and emotional injuries.

362. As a result of the aforementioned conduct of Defendant POLICE OFFICERS, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR suffered and sustained physical and emotional injuries and were harmed.

363. As a result of Defendants' impermissible conduct, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR demand judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL*

364. Further information regarding these aforesaid customs and practices is set forth in the appendix attached to the Plaintiffs' Initial Complaint, "ADDITIONAL FACTS PLEADINGS IN SUPPORT OF MONELL CLAIMS" which is herein incorporated by reference.

365. Upon information and belief, Defendant, CITY OF NEW YORK, and the New York City Police Department failed to effectively screen, train, supervise and discipline its POLICE OFFICERS, including, but not limited to, the Defendant POLICE OFFICERS , as demonstrated by their propensities for utilizing excessive force and making false arrest, and for their failure to protect citizens from unconstitutional conduct of other POLICE OFFICERS.

366. Upon information and belief, Defendant CITY OF NEW YORK, failed to put into place and otherwise maintained an inadequate structure for risk containment and stress management relative to its POLICE OFFICERS. *Inter alia*, the structure was deficient at the time of pre-selection and selection to evaluation and exchange within the command structure about the performance of individual POLICE OFFICERS; to the training of supervisory personnel to effectively and adequately evaluate performance of an officer; and to otherwise put the command structure on notice that an individual was at significant levels of risk to the public at large or to specific segments thereof.

367. The net effect of these deficiencies and failures was to permit POLICE OFFICERS of the New York City Police Department to function at levels of significant and substantial risk to the publics.

368. The net effect of these deficiencies and failures caused the Defendant POLICE OFFICERS herein to subject Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR to constitutionally-violative arrests pursuant to customs, policies, usages, practices, procedures and rules of Defendant THE CITY OF NEW YORK, including but not limited to: "Contempt of Cop" arrests and subsequent "Cover Charges", and illegal "productivity goals" or arrest quotas, and

369. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department evince deliberate indifference to the

safety, well-being, and constitutional rights of Plaintiff CLARK STOECKLEY and Plaintiff
ERIK MCGREGOR.

370.  The foregoing customs, policies, usages, practices, procedures, and rules of the City of
New York and the New York City Police Department were the direct and proximate cause of
the constitutional violations suffered by Plaintiff CLARK STOECKLEY and Plaintiff ERIK
MCGREGOR as alleged herein.

371.  The foregoing customs, policies, usages, practices, procedures, and rules of the City of
New York and the New York City Police Department were the moving force behind the
constitutional violations suffered by Plaintiff CLARK STOECKLEY and Plaintiff ERIK
MCGREGOR as alleged herein.

372.  As a result of the foregoing customs, policies, usages, practices, procedures and rules
of the City of New York and the New York City Police Department, Plaintiff CLARK
STOECKLEY and Plaintiff ERIK MCGREGOR were subjected to excessive force, false arrest,
and excessive and unnecessary detention.

373.  As a result of the foregoing, Plaintiff CLARK STOECKLEY and Plaintiff ERIK
MCGREGOR were caused to suffer personal injuries, violations of their civil rights, negligent
and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of
freedom, loss of wages, legal expenses, and damage to their reputation and standing within
their communities.

374.  As a result of the foregoing, Plaintiff CLARK STOECKLEY and Plaintiff ERIK
MCGREGOR demand judgment against Defendants in a sum of money to be determined at
trial.

**SIXTH CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

375.  Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR repeat, reiterate and
re-allege each and every allegation contained in the above paragraphs with the same force and
effect as if fully set forth herein.

376.  Defendants misrepresented and falsified evidence before the District Attorney.

377.  Defendants did not make a complete and full statement of facts to the District Attorney.

378.  Defendants withheld exculpatory evidence from the District Attorney.

379.  Defendants were directly and actively involved in the initiation of criminal proceedings
against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

380.  Defendants lacked probable cause to initiate criminal proceedings against Plaintiff
CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

381.  Defendants acted with malice in initiating criminal proceedings against Plaintiff
CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

382.  Defendants were directly and actively involved in the continuation of criminal
proceedings against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

383.  Defendants lacked probable cause to continue criminal proceedings against Plaintiff

CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

384. Defendants acted with malice in continuing criminal proceedings against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

385. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings against Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR.

386. Notwithstanding the perjurious conduct of defendants, the criminal proceedings were terminated in Plaintiff CLARK STOECKLEY's favor on or around February 1, 2012 and on May 7, 2012, when all charges against him were dismissed.

387. Notwithstanding the perjurious conduct of defendants, the criminal proceedings were terminated in Plaintiff ERIK MCGREGOR's favor on or around May 7, 2012, when all charges against him were dismissed.

388. As a result of the foregoing, Plaintiff CLARK STOECKLEY and Plaintiff ERIK MCGREGOR were caused to suffer violations of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to their reputation and standing within their communities.

## SEVENTH CLAIM FOR RELIEF
## RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
### UNDER 42 U.S.C. § 1983

389. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

390. At or around the time that Plaintiffs came into contact with the Defendant POLICE OFFICERS, Plaintiff CLARK STOECKLEY was engaging in protected speech and conduct, including but not limited to owning and displaying The WikiLeaks Truck and thereby promoting an entity whose mission conflicts with the central idea behind the NYPD's "Blue Wall of Silence."

391. At or around the time that Plaintiffs came into contact with the Defendant POLICE OFFICERS, Plaintiffs were engaging in protected speech and conduct, including but not limited to using the WikiLeaks Truck to assist Occupy Wall Street demonstrators obtain blankets, winter clothing, and other supplies.

392. The Defendant POLICE OFFICERS took adverse action against Plaintiff CLARK STOECKLEY for engaging in such protected speech and conduct.

393. The Defendant POLICE OFFICERS took adverse action against Plaintiff ERIK MCGREGOR for his association with Plaintiff CLARK STOECKLEY.

394. The Defendant POLICE OFFICERS took adverse actions against Plaintiffs by using wrongful and unjustified force upon Plaintiffs.

395. The Defendant POLICE OFFICERS took adverse action against Plaintiffs by unlawfully arresting them without probable cause.

396. The Defendant POLICE OFFICERS took adverse action against Plaintiffs by falsely accusing them of crimes and violations.

397. The Defendant POLICE OFFICERS took adverse action against Plaintiffs by taking Plaintiffs into Police custody and detaining them against their will.

398.  The Defendant POLICE OFFICERS took adverse action against Plaintiff CLARK STOECKLEY by hiding The WikiLeaks Truck.

399.  Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken by the Defendant POLICE OFFICERS.

400.  The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken against Plaintiffs by the Defendant POLICE OFFICERS was demonstrated by, among other things, the fact that members of the NYPD have previously and on multiple occasions stopped and/or arrested Plaintiff CLARK STOECKLEY while Plaintiff was driving The WikiLeaks truck, despite the fact that Plaintiff, on each occasion, was not engaged in any illegal activity of any kind or sort.

401.  The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken against Plaintiffs by the Defendant POLICE OFFICERS was demonstrated by, among other things, the absence of probable cause justifying Plaintiffs' arrests.

402.  The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse action taken against Plaintiffs by the Defendant POLICE OFFICERS was demonstrated by, amongst other things, the fact that the Defendant POLICE OFFICERS provided false information regarding where The WikiLeaks Truck would be towed to following Plaintiff CLARK STOECKLEY's arrest and for approximately six days thereafter, in essence, hid The WikiLeaks Truck from Plaintiff CLARK STOECKLEY.

403.  The Plaintiffs were falsely accused of crimes and violations and were taken into Police custody and detained against their will.

404.  Following their arrests, Plaintiffs were subjected to prosecution.

405.  The above-described charges were pretexts intended to justify the Defendant POLICE OFFICERS' illegal arrests of Plaintiffs.

406.  The actions of the Defendant POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause bodily harm, pain and suffering both in violation of Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

407.  The conduct and actions of the Defendants POLICE OFFICERS acting under color of State law, in assaulting, detaining and imprisoning the Plaintiffs were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily harm, pain and suffering both in violation of Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

408.   The Defendant POLICE OFFICERS deprived Plaintiffs of their liberty in violation of both their civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

409.   The Defendant POLICE OFFICERS' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

410.   As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to their reputations and standings within their communities.

411.   As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:        New York, New York
              JUNE 11, 2014

Respectfully submitted,

ISAAC MYERS III, ASSOCIATE [IM 1186]
STECKLOW COHEN & THOMPSON
10 Spring Street Suite 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
ATTORNEYS FOR PLAINTIFFS